Good morning, Your Honors. May it please the Court. My name is Amit Vora from the Law Firm of Kazowitz, Benson & Torres. We represent the plaintiff, Brett Favre. This Court should reverse the determination that Defendant Shannon Sharpe's words were not even capable of a defamatory meaning. Sharpe repeatedly accused Favre of specific misconduct, and as Judge Starr recognized in Ullman, an accusation of specific misconduct is quintessential defamation and is often defamation per se. So contrary to the position taken by my friend on the other side, there is no rich historical tradition of accusing others of committing specific misconduct. And here, to steal means to misappropriate, which means to take for oneself wrongfully. So given the context, these reasonable listeners who heard Sharpe saying that Favre stole while discussing ongoing criminal and civil actions and news reports about welfare funds in Mississippi, that listener could have interpreted Sharpe to mean that Favre had actually and wrongfully taken welfare funds. And because that is by definition stealing, that listener is taking Sharpe literally, not figuratively. Therefore, the defense of rhetorical hyperbole cannot apply. Now, for a court to pour a plaintiff out of court at the pleading stage on rhetorical hyperbole grounds, where the plaintiff is fighting off an accusation of specific misconduct, it must be impossible for that reasonable listener to take that literally. That's the high bar that the Supreme Court set in Greenbelt and letter carriers, and that bar has not been met here. So with respect to this issue of rhetorical hyperbole, I mean, query, is hyperbole ever not rhetorical? But, you know, I don't know. That's just the doctrine. You're focusing on the steal, steal from the lowest of the low, taking from the underserved, stole money from people. That's where we should focus to see that this is not rhetorical hyperbole. So we're not looking, the reason I ask is because we're not looking at sort of some of the colorful sleazeball, slate shady, these kind of language, Rob Peter to pay, well, maybe Rob and Rob Peter to pay Paul. Yes, Your Honor. We're not looking at those sentences. Because then it starts to look like rhetorical hyperbole for you saying, oh, you know, this is a monster, this is whatever, you know, the sleazeball. That starts to look like rhetorical hyperbole. Yes, Your Honor. Reasonable listeners are able to differentiate between statements that are meant to be taken literally and those that are meant to be taken rhetorically. And that happens in case after case, Lewinsky's, Yanelko, and even Milkovich. In case after case, when a speaker makes statements that include statements that are both rhetorical and literal, and then the plaintiff sues for defamation on the literal statements, and those literal statements are accusations of specific misconduct. Those emotionally laden rhetorical statements don't immunize the actual statements based on specific misconduct. Correct me if I'm wrong, but during this program, I've watched the video, but during this program, viewers were informed, if I'm not mistaken, that Favre had not been charged with any crime in relation to this controversy. Is that right? Your Honor, that's correct, except that as soon as Skip Bayless said Favre has not been charged with a crime, he said, yet, and he said Who said yet? Bayless said yet? Bayless said yet, and Bayless also said something should come down from this, and Sharpe replied, he should be. Sharpe also added that the only reason Favre is not in jail is because of systemic racism in our criminal justice system. According to Sharpe, black and brown people, this is his quote, black and brown people go to jail when they defraud the government, but Favre hasn't. So their suggestion and the implication that they're leaving in the mind of a reasonable reader or listener is that Favre has committed misconduct that amounts to a crime, and it's only a matter of time before he is among those charged, and that is a defamatory lie. Favre did not steal. He did not take, nor did he retain or not On the brunt of that, it seems to be odd that you didn't include some of this. The only reason he's not in jail already, he should be in jail, the adding of the yet, oh, you're not suing over those. What's your distinction? Those aren't the actionable words that brought you here, yet you're relying on them for present purposes. Your Honor, we zeroed in on the statements where Sharpe was accusing Favre of stealing from people in need, because that is particularly contemptible conduct, and it's something Favre has never done. So we zeroed in on those three statements, but the other statements likely to be rhetorical hyperbole, it seems to me. I'm not giving result-oriented here, but it does seem to me you talk about this money should have been gone to welfare recipients, he wasn't actually charged with a crime, whatever else is said is background, and then it's characterized by Sharpe in the way that he characterizes it. So it does seem to me it's at least in the ballpark of rhetorical hyperbole, because it's money should have gone one place and it went to someplace else. That's stealing in the hyperbolic sense. Help me with this. Because really what you're responding to my colleague with are some things that you're not suing over, that you say, what, I guess give context to how we should read these hyperbolic statements? Your Honor, just based on those statements alone, and given the context, because context is key and something we must look at in this rhetorical hyperbole analysis, a reasonable listener could have come away with an impression that Farr had actually and wrongfully taken and stolen welfare funds, and that's actual defamation, because that reasonable listener is taking the word steal literally and not figuratively. And I think a useful heuristic here is to compare cases such as Greenbelt and letter carriers and use this rule of thumb. The question is whether the meaning of the literal language used matches with the impression that's left in the mind of a reasonable listener. So in Greenbelt and letter carriers, for example, if the speaker says of the other party in a deal that that party is committing extortion or blackmail, well, that's a metaphor for sharp negotiating tactics. Or if a speaker says that a non-unionized employee is a traitor, well, that's plainly a metaphor for disloyalty. So there's a mismatch, but here there is a match. When Sharpe said that Farr stole funds and took funds, that leaves in the mind of a reasonable listener that Farr has actually and wrongfully taken funds that didn't belong to him, and that is stealing. So rhetorical hyperbole cannot and should not apply here. What's your best case that language like this has been held to be defamatory? Oh, Your Honor, Milkovich. I think Milkovich is the best case, and yet it's a case that in our view the district court did not take seriously enough. If anything, the district court applied the dissent in Milkovich instead of the holding. In Milkovich, Chief Justice Rehnquist held that perjury is a specific accusation of misconduct. So even if the op-ed at issue was, as Justice exaggerated, heavily laden with emotional rhetoric and outrage, that still did not immunize the accusation of specific misconduct. And so in our view, the district court is swearing fealty to Milkovich, but then fighting this rear-guard action against its reasoning and holding. That decision should not be prevented to stand to take Milkovich. Remind me what the defamatory language was in Milkovich. In Milkovich, the specific accusation that was sued upon was simply that Milkovich, who was a high school wrestling coach, has committed perjury. Now, there are surrounding sentences that added colorful context, and Chief Justice Rehnquist said despite those sentences, which are very emotionally laden, we can strip out the emotion and a reasonable listener could conclude, based on this specific accusation of misconduct, that this is a factual assertion that is at least capable of a defamatory meaning and therefore actionable. And I must emphasize, Your Honors, we're at the motion to dismiss stage. The question here is whether these words are even capable of a defamatory meaning, and yet part of it's been poured out of court. I have a question about that. Isn't it the court's role to decide this question is a matter of law? So then how does it, why does it matter that it's at the 12B6 stage? Your Honor, it is the court's role to decide the question is a matter of law, and the court may decide that question at the motion to dismiss stage, but courts often wait to decide that after some factual development and then decide the question as a matter of law that happens often. It happened in Unelco, Levinsky's. But the facts aren't going to change in terms of what was said in the video. Yes, Your Honor, and I think the next question after determining that these words are capable of a defamatory meaning, which they are, is what in fact did Sharpe's audience understand the words to mean? And that's an important question which we'll get to after factual development. But assuming that no reasonable listener could have understood Sharpe to have been speaking literally, I think is unwarranted, especially under Milkovich. And in fact, unlike cases like Milkovich, Sharpe here repeated his misconduct. So if a speaker is discussing a deal with another party and says once in a paroxysm of anger that party has extorted us, well then perhaps you can chalk that up to rhetorical hyperbole. But here, Sharpe has repeated his accusation. So at a certain point, that repetition moves a statement from the category of Greenbelt and say Hogan into the category of Friedman. In addition, Sharpe, Baylis, and the moderator make these superficial allusions to news reports and ongoing and criminal and civil actions, but they don't describe these actions or reports adequately. I was going to, so I don't mean to interrupt you, but I was going to ask you about that. Does it matter, does it help your case or hurt your case that the context of this discussion is an article, a public article, and then texts? At some point, Sharpe is reading the texts during the exchange. Does that help you or hurt you? I really don't know how that cuts, but. That helps because it gave this particular segment this veneer of credibility and authenticity, which could have led a reasonable listener to take these remarks seriously. So that moves our case outside of the category of say Rappaport. There, the statements were made during a diss track where every statement could be chalked up to rhetorical hyperbole. You couldn't take any of that seriously. But here, they're at least purporting to take themselves seriously, even though they're getting the facts wrong. But that still supports the inference that Sharpe's remarks should be taken literally and not rhetorically. And the other problem here with categorizing this as rhetorical hyperbole is that it's an unprecedented extension of the doctrine. And as Dean Prosser and Judge Sack say in their treatises, the reason that rhetorical hyperbole is not actionable is that it's necessarily understood to be just that, rhetorical hyperbole. So it necessarily doesn't affect the plaintiff's reputation. But here, viewers have internalized this false idea that Favre stole money. That idea has taken root in the public discourse. It's pierced the cultural zeitgeist. And yet, there is no evidence for it. But at the same time, because Favre was poured out of court at the pleading stage, he's unable to counteract this insidious and spreading lie. There is readily available evidence that viewers, in fact, took this accusation literally, that this accusation, in fact, harmed Favre's reputation, and that Favre, in fact, has never stolen money from anyone. And yet, that evidence may never see the light of day. So in a sense, allowing the exception to swallow the rule here is both harmful and perverse. It empowers Sharpe to filch from Favre his good name, but it renders Favre powerless to counteract this attack on his reputation. So on rhetorical hyperbole grounds, I don't think that Sharpe has a strong case. On the fair comment ground, I don't even think that's a colorable argument. That's borderline frivolous. And now for the disclosed factual predicate analysis, here, that analysis isn't even triggered, again, under Milkovich. And we need to take Chief Justice Rehnquist's reasoning and holding in Milkovich seriously. This is a statement laden with factual content. It is a factual assertion. Whether Favre stole or he didn't can be proven true or false. And that's very different from statements, say, in Ferguson, where a physician sued the speaker for stating that physicians' fees are too high. There's no settled methodology to determine whether that's true. But that's... You're talking about alternative grounds now? Yes, Your Honor. And so is your... I'll ask the other side, but in your view, if we... let's say we agreed with you on rhetorical hyperbole, do you think we should go forward and address those other grounds or just leave them on remand? Leave them on remand, Your Honor. I think that would be the appropriate course to reverse and reinstate the action so the parties can move forward and litigate the actual facts. And if Your Honor's were... Don't we have the authority to reach it? Isn't this a legal issue? If it was an official proceeding and how to react, sort of like just another 12B6 issue that was litigated below, I bet you would like us to move beyond them. But don't we have the authority to consider the other arguments that were before the district court? You have the authority to do so, but especially with respect to the disclosure issue, that involves factual analysis. With respect to the fair comment issue, that is whether this was a neutral comment on an official proceeding, perhaps that could be decided on a 12B6. But this is so clearly not a neutral comment on an official proceeding. I mean, that argument, I would prefer not to spend much time on because it's just so meritless. Well, you only have 20 seconds, so... Yes, in that case, I'll just close by saying that the disclosure inquiry should not even be triggered, not only because this is a factual assertion, but even if you think it's an opinion, it's the type of opinion that's inextricably intertwined with the purported factual disclosures. So see Judge Friendly's decision in Cianci, for example, where that sort of opinion doesn't trigger the disclosure analysis. Good morning, Your Honors. Joe Terry with Williams & Connolly for Appellate Shannon Sharp. With me is Mike Hurst from Phillips Dunbar and my colleague, Tyler Infinger. The district court correctly held that Mr. Sharp's comments were non-actionable rhetorical hyperbole beyond the scope of Mississippi Defamation Law and protected by the First Amendment. And in analyzing whether statements constitute rhetorical hyperbole, this court and others have consistently stressed that the words must be evaluated in light of their entire context, evaluating the speaker, the medium, the words it's used around, and the overall context. And I understand, Judge Duncan, that you have reviewed the broadcast, and I would refer to all of the members of the panel to take a look at that broadcast, which we can make available. Because viewing the broadcast leaves no question that every aspect of the context informed the reasonably intelligent viewer that they were not hearing an objective recitation of the facts from Mr. Sharp, but rather commentary, hyperbolically expressed or rhetorically expressed. Well, so, I mean, look, the difference between a show like, what is the show called, Undisputed? Undisputed. And news is blurring in today's world. I see these kinds of discussions all the time on CNN and Fox and Undisputed and wherever else. So sure, they're joking sometimes and it's hyperbolic sometimes. This, I mean, look, this particular one, and I want to hear your characterization of it, they're referring to a specific story, right, that this sort of expose of what is, of how this has come out, right? I forget where it was. And Sharp, at one point, was referring to the text, himself, he's reading them. So, I mean, they are talking about something concrete and specific, right? So what about the context, though, lends weight to your argument? If you look at the context from the very beginning, I think it's incredibly instructive and helpful. It begins with an announcer throwing a topic to Mr. Sharp and Mr. Bayless to discuss. And she begins by saying, yesterday, Mississippi Today revealed something like Mr. Favre, together with a former governor, worked to redirect $5 million in welfare funds to build a volleyball arena. Mr. Favre doesn't deny that that article was correctly described. He doesn't even deny that those facts set forth in that article are true. And as soon as the announcer explains what the article says, she turns to Mr. Sharp and says, Shannon, in your view, how will that affect Mr. Favre's legacy? Immediately signaling to viewers that what they're about to hear is Mr. Sharp's discussion of his views of how this will affect Mr. Favre's  I think there are four cases that deal with these shows that are infotainment, or maybe some news and some commentary. And I think two are really instructive, maybe three. You have the Tucker Carlson case out of the Southern District of New York. It's McDougal versus Fox News. And in that case, Mr. Carlson is reporting on news events about Catherine McDougal, I believe her name was. She was an alleged paramour of former President Trump. And he accuses her of a, quote, classic case of extortion, going through the factors that he thinks make up extortion. The Southern District of New York said that is rhetorical hyperbole given the nature of the show and the context of the comments. Same result in the Southern District of California dealing with Rachel Maddow, different side of the political spectrum, different coast, same results. When she refers to a news agency as being really, literally paid Russian agents. Both cases, the courts found that was rhetorical hyperbole because of the entire context. And there was some discussion my friend had about other language used there like scumbag, sleazeball, shady, diva that Mr. Sharp used. Courts have consistently said that even if that is not the language that is being sued over, it's instructive. That's the Rappaport versus Barstool case. And that's the Keohane case, which my friend really relies on in the briefing out of Colorado, which was to some degree adopted by Mississippi in a subsequent case. Both of those cases say when a reasonably intelligent viewer encounters words like that, they understand that the words around it are likely to be rhetorical hyperbole and not a plain recitation of facts. And that's particularly evident here because the statements at issue begin with Mr. Sharp saying the problem that I have with this, which immediately signals to viewers that they're about to hear opinion. And then he signals he's going to speak in inflammatory, vituperative language. He says, you've got to be a sorry mofo to steal from the lowest of the low. And he's immediately connecting what he's saying, saying stealing from the lowest of the low, not to some undisclosed fact he has, which was the case in Milkovich, which was the case in Keohane, which was the case in the Andy Rooney case, and every other principle case that we're relying on. He's not saying he has any particular facts. He is reacting to the question from the moderator based on the Mississippi Today. And he says, you've got to be a sorry mofo to steal from the lowest of the low. And he goes on shortly after to make the two other challenge statements. So a reasonable reader knows that they are going to get rhetorical hyperbole. And at the very end of the whole broadcast, Mr. Sharp ties it together when he explains it as robbing Peter to pay Paul, that I'm not going to pretend that I'm some big $5 million to my university when I'm really getting money from the federal government. If you extend your argument beyond these particular facts, then Mr. Sharp would be almost entirely insulated from any defamatory claims as long as he said it in this infotainment scenario. But what would be an example of a defamatory statement that he could make? Well, it's highly context dependent. So I think it's going to depend exactly on what was said, the context. But clearly, there are situations where someone could be in a space like in the Andy Rooney case. Andy Rooney, the sort of comical commentator on CBS, he was at the end of 60 minutes in the 80s or 90s or something. He launched the same defense. And what he said is that he tested a product himself, that he was sent a product, he tested it, and it didn't work. And the court said that that was actionable. And it was actionable because he was saying a literal fact that could be true or false, the product worked or it didn't. And he was saying it was based on his personal knowledge, that he had an undisclosed factual basis for saying that, that he had used it, he had experiences. And if you look at every case on which they rely, there is that element of an undisclosed personal basis. The Milkovich case is a great example of that. In Milkovich, the reporter said, I am in a unique position. This is in footnote two of the Supreme Court opinion. It says exactly what he said. I'm in a unique position to say that he was both a witness to the underlying events and I was a witness to his testimony. And I know that he perjured himself. That is 180 degrees from what Mr. Sharpe said. There's no suggestion that he had any personal knowledge. I understand your point about non-disclosed versus public facts. What I have trouble with is connecting that up to the rhetorical hyperbole part of this. Because as I understand it, that's sort of a discrete issue that we have here before us. And there's some other issues on which you may or may not win. They're arguably not before us, so there's something that's within our discretion and reach. So I guess, if you could, connect what you're saying about, hey, I tested what Rooney tested, what Rain X. I can almost see him doing that. Connect that to rhetorical hyperbole, though. That's what I'm... Sure. And I think the best example of this is the case they rely on, which is the Keoghan case out of Colorado, adopted by Mississippi. And at Keoghan, the court looks at two sets of statements, one that they talk about and one that they don't. In the set of statements they talk about, there's a city councilman, and he says to a reporter after a very controversial trial, that's the best judgment he can buy. Do you think he was paid off in cash or cocaine? And the court said that was actionable. And the court said it was actionable because the reasonable viewer would have assumed that the city councilman had facts that he didn't share, and therefore, it was a literal assertion of facts, not rhetorical hyperbole. Now, in their brief, they suggest that that didn't happen, that that person didn't have any facts. But Keoghan has an entire paragraph where their court says, one of the reasons why the city councilman's words are actionable is because a reasonable viewer would assume that a city councilman speaking about a judge would possess facts. And that suggests that it's meant literally, as opposed to just hyperbolically, like when a former tie and end opines on another football player and headlines about that football player that happened here. The other set of statements in Keoghan was somebody writing in the editorial section of a paper. And Keoghan finds that that language is non-actionable. And it points to some of the vituperative language used in that article, things like scumbag, sleazeball, very similar to the language used here, exclamation points. The transcript doesn't reflect any exclamation points. But if you saw the video, you know that Mr. Sharpe speaks in exclamation points. And let me ask you this. So suppose I understood what Mr. Sharpe is saying to be this. I know he's not saying this, but literally. But OK, I read this story, Favre is stealing from the poor. He hasn't been charged like some other people have, but he should be. Is that rhetorical hyperbole or is that a different case? That would clearly be opinion based. Sure, that's a different issue. Yeah. It could be rhetorical hyperbole given the entire context. It's quite clearly to say, here are the facts. You can decide for yourselves whether he should be charged or not. I think he should be charged. That's opinion based on disclosure. Well, no doubt that's separate, though, than rhetorical hyperbole. The reason I give that hypo is because that note, that sounds less like rhetorical hyperbole than what we have here, arguably. And I think it depends on the context. If it's on Fox News or MSNBC and it's a legal analysis saying, here are the facts. I believe this person should go to jail because of those facts. That would likely not be rhetorical hyperbole, but it would be opinion based on disclosed facts. Well, on MSNBC, if they say the Fifth Circuit is the worst court in the nation, is that rhetorical hyperbole? Absolutely. Absolutely. Again, it depends on the context. It depends on the statement being made. But I will say one thing about disclosed facts and opinions based on disclosed facts. Mississippi defamation law, state defamation law, which is relevant here to these claims, is incredibly protective of those types of claims. And here's exactly what Mississippi courts have said, according to this in the Chamblee case. Opinion statements are actionable only if they clearly and unmistakably imply the allegation of undisclosed false and defamatory facts as the basis of the opinion. There is not a single allegation or suggestion that Mr. Sharp was acting on undisclosed facts. The key facts on which he has relied, as Judge Duncan, you refer to the text message between him and Nancy Neu, that's shown to the viewers so they can have their own opinions about it. He discusses his opinion of that text message, which is you don't write a text message saying, is there any way the press could find out about this unless you feel like you have something to hide? He's offering his opinion based on that disclosed fact. And this court clearly has the authority to affirm based on those alternative grounds. They're legal grounds protected by Mississippi law. Do you think we should or do you think we ought to do that? If you jump over rhetorical hyperbole, let's say we disagree with you on that and get to these other grounds. Your Honor, the court can affirm on any ground. I mean, do you but do you think it's appropriate for us to do that or should there be more factual development on some of this? I do think it's appropriate for a couple of reasons. First of all, under Mississippi law, it is for the court as a matter of law to determine whether words are defamatory and actionable. That's an inherent part of that decision. The Supreme Court has said that the level of review this court and it exercises is de novo in order to conduct a searching review to ensure there is no, quote, forbidden intrusion onto free speech. That's from the Bose v. Consumer Union case. So this court, I think, does have an obligation to perform that searching inquiry. And that means asking, are there alternative bases on which to affirm? Because part of the reason why these defenses exist is not just to shield defendants from ultimate liability, but also to shield defendants from the cost of litigation associated with lawsuits like this. And as the Supreme Court has repeatedly said, in essence, the reason why there are these protections for rhetorical hyperbole and for statements of opinion is to ensure that we have vibrant discussion on important issues of public policy. There's no question here that Mr. Shannon was discussing an important issue to people of Mississippi, to Americans, and he was expressing his opinion. And to hold for Mr. Shannon's lawsuit to proceed would risk chilling that very kind of discussion, those very kinds of comments. The comments that Mr. Sharpe used are ones that have a long and rich history in American political discourse. There's probably nobody in this courtroom who at some point has not referred to somebody as stealing or robbing or taking something they didn't deserve in some political context. That's what Mr. Sharpe was doing. If you read his comments in context, it's quite clear that he was expressing his opinions rhetorically, fiery, but they were protected by the First Amendment. Any more questions? If not, thank you for your time. Please affirm. Your Honor, just to clarify some of the case law. First, with respect to whether personal knowledge is a factor in the rhetorical hyperbole analysis, it's not. And courts often do hold that despite the speaker having no personal knowledge, that speaker may still be stating facts. So, for example, in Cianci. Cianci is a great case for this proposition. There, the speaker accused the mayor of Providence of having raped a woman 12 years ago when the mayor was a law student. That speaker had no personal knowledge of the events, and the court held that this accusation of specific misconduct is actionable. It cannot be taken as rhetorical hyperbole. It should be taken literally because a reasonable person could take it literally. And what Judge Friendly said, I think, is very applicable to what's going on here. He says, serious charges have not yet become undefined slogans that are part of the conventional give and take in our economic and political controversies. We haven't reached the point yet where we can just attack one another and accuse one another of specific misconduct and escape defamation liability by hiding behind the doctrine of rhetorical hyperbole. And with respect to McDougall and Harrington networks, those cases are distinguishable because there, the opinion was easily isolatable from the disclosed facts. In McDougall, Dr. Carlson started this segment by saying, I'm going to stipulate a set of facts, and then I'm going to get to my opinion. And in Harrington networks, Rachel Maddow did something very similar. And in fact, the Ninth Circuit said that her opinion had been sandwiched between factual assertions. Whereas here, there's no way the reasonable listener could have determined where Sharpe's opinions were beginning and where the factual predicates were ending. Finally, on this point about ensuring that speakers have a breathing room to opine on matters of public interest, Sharpe has all the breathing room that the Constitution affords. He may criticize public figures on matters of public interest. And the reason is there's this requirement that if he is spewing an opinion, if he is spewing something that cannot be objectively verified and determined, then he has a safe harbor. In addition, if he's actually talking about a public figure, then he must satisfy the requirement of actual malice, which is a very difficult requirement. And there, Chief Justice Rundquist says that we have that requirement, the actual malice requirement, to ensure that debate on public issues remains uninhibited, robust, and wide open. But at the same time, there's a countervailing interest in ensuring that citizens can protect their reputations. We do not want and we do not have a society where one citizen can just freely attack another citizen and get away with it. And then on that point, Chief Justice's, or excuse me, Justice Stewart's observation in Rosenblatt is very, very on point. He says, the ancient right of a private citizen to redress an attack on reputation reflects the basic concept that every person has essential dignity and inherent worth, which is itself a bedrock premise of any decent system of ordered liberty. So, Your Honor, here it's as far as name at issue, and that's why this Court should reverse. All right, counsel. We have your argument. Appreciate the assistance of both sides in bringing this case to us. We will take it under advisement.